```
1  JOHN PROVOST, SBN 125458
   BEESON, TAYER & BODINE, APC.
2  1001 – 6th Street, Suite 500
3  Sacramento, CA 95814
   Telephone: 916.441.2196
4  Facsimile: 916.441.5208
5
   Attorneys for Plaintiff
6
7
```

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

C 04 - 0385     BZ

| | |
|---|---|
| NORTHERN CALIFORNIA SHEET METAL WORKERS TRUST FUND,<br><br>Plaintiff,<br><br>v.<br><br>THE MEGA LIFE AND HEALTH INSURANCE COMPANY, an Oklahoma Corporation,<br><br>Defendant. | Case No.<br><br>**COMPLAINT FOR BREACH OF CONTRACT, BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING, AND DECLARATORY RELIEF** |

Plaintiff NORTHERN CALIFORNIA SHEET METAL WORKERS TRUST FUND (hereafter, "Plaintiff Trust") hereby alleges as follows:

JURISDICTION

1. This Court has jurisdiction of this matter based on diversity of citizenship, pursuant to 28 USC Section 1332(a) and (c). Plaintiff Trust is a citizen of California, where it is administered and conducts business, and Defendant MEGA LIFE AND HEALTH INSURANCE COMPANY (hereafter, "Defendant Insurer") is a citizen of Oklahoma, its state of incorporation, and Texas, which Plaintiff Trust alleges, based on information and belief, is its principal place of business.

Complaint

512889.doc

## INTRODUCTION

2.      Plaintiff Trust is a multi-employer trust fund, and an employee welfare benefit plan within the meaning of Section 3 of the Employee Retirement Income Security Act (ERISA), 29 USC Section 1002. Plaintiff Trust is also a non-profit entity under Section 501(c)(9) of the Internal Revenue Code.

3.      Plaintiff Trust provides medical benefits to its covered participants, who are active and retired employees in the sheet metal industry. Plaintiff Trust offers indemnity plan benefits to its covered participants pursuant to a benefit plan, paying claims itself out of trust funds.

4.      Associated Third Party Administrators (ATPA) is a third party administrator, and administers the Trust's benefit plan, including the payment of claims to covered participants.

5.      Defendant Insurer issued an excess loss insurance policy (hereafter, "the Policy") to Plaintiff Trust, effective September 1, 1999 through August 31, 2000. The Policy provided specific stop-loss coverage as follows: claims paid by Plaintiff Trust pursuant to its benefit plan during the period covered by the Policy, and exceeding a $125,000 deductible per covered participant, would be paid by Defendant Insurer.

6.      Plaintiff Trust has paid all premiums owed to Defendant Insurer as consideration for the Policy.

7.      From December, 1999 through August, 2000, Plaintiff Trust paid medical claims incurred by its covered participant, Zachary Smith, which exceeded the specific stop loss deductible of $125,000. These claims reached the deductible amount on or about May 9, 2000, and Plaintiff Trust informed Defendant Insurer of this fact on or shortly after May 9, 2000. The amount of such claims paid by Plaintiff Trust that exceeded the deductible amount totaled $72,121.15, for which amount Plaintiff Trust demanded payment from Defendant Insurer. On or about March 9, 2001, Defendant Insurer informed Plaintiff Trust that it would not pay this claim.

8.      From November, 1999 through August, 2000, Plaintiff Trust paid medical claims incurred by its covered participant, Michael Latimer, which exceeded the specific stop loss deductible of $125,000.

These claims reached the deductible amount on or about February 4, 2000, and Plaintiff Trust informed Defendant Insurer of this fact on or shortly after February 4, 2000. The amount of such claims paid by Plaintiff Trust that exceeded the deductible amount totaled $25,470.87 for which amount Plaintiff Trust demanded payment from Defendant Insurer. On or about March 9, 2001, Defendant Insurer informed Plaintiff Trust that it would not pay this claim.

9. From October, 1999 through August, 2000, Plaintiff Trust paid medical claims incurred by its covered participant, Laura Kneppel, which exceeded the specific stop loss deductible of $125,000. These claims reached the deductible amount on or about August 16, 2000, and Plaintiff Trust informed Defendant Insurer of this fact on or shortly after August 16, 2000. The amount of such claims paid by Plaintiff Trust that exceeded the deductible amount totaled $2,215.41, for which amount Plaintiff Trust demanded payment from Defendant Insurer. On or about March 9, 2001, Defendant Insurer informed Plaintiff Trust that it would not pay this claim.

10. From December, 1999 through August, 2000, Plaintiff Trust paid medical claims incurred by its covered participant, Hannah Smith, which exceeded the specific stop loss deductible of $125,000. These claims reached the deductible amount on or about March 22, 2000, and Plaintiff Trust informed Defendant Insurer of this fact on or shortly after March 22, 2000. The amount of such claims paid by Plaintiff Trust that exceeded the deductible amount totaled $2,498.74, for which amount Plaintiff Trust demanded payment from Defendant Insurer. On or about March 9, 2001, Defendant Insurer informed Plaintiff Trust that it would not pay this claim.

11. For each of the excess stop loss claims set forth in Paragraphs 7 through 10, above, that were denied by Defendant Insurer, Plaintiff Trust notified Defendant Insurer of its claims in the same manner: a monthly report which showed if the total claims for each covered participant had reached or exceeded the excess stop loss deductible amount, followed up by proof of loss and formal demand for payment.

3

Complaint

512889

12. It had been Plaintiff Trust's practice before the claims set forth in Paragraphs 7 through 10, above, were denied by Defendant Insurer, to present claims to Defendant Insurer in the same manner as these claims were presented, i.e., by submitting monthly reports showing total claims for covered participants that had reached or exceeded the excess stop loss deductible amount, followed up by proof of loss and formal demand for payment. It had also been Defendant Insurer's practice to pay specific stop loss claims to Plaintiff Trust that were presented in this manner.

FIRST CAUSE OF ACTION

(Breach of Contract)

13. Plaintiff incorporates by reference and realleges as though fully set forth herein each and every allegation set forth in Paragraphs 1 through 12, above.

14. While the Policy was in full force and effect, Plaintiff Trust paid medical claims in excess of the specific stop loss deductible amounts for four covered participants in the amount of $102,306.17, which Defendant Insurer has refused to pay. Defendant Insurer was required to pay this amount in excess specific stop loss claims to Plaintiff Trust under the terms of the Policy and consistent with the practice of the parties for presenting and paying such claims.

15. Plaintiff Trust paid its premiums and in all other respects performed its obligations under the Policy with respect to the excess specific stop loss claims set forth in Paragraphs 7 through 10, above. Plaintiff Trust had demanded payment of the $102,306.17 in excess specific stop loss claims set forth in Paragraphs 8 through 11, above, and Defendant Insurer has refused to make payment.

16. The notice-prejudice rule under California law applicable to policies of insurance applies to the Policy herein. Defendant Insurer has not been prejudiced by Plaintiff Trust's manner or timing of providing notice to Defendant Insurer of claims under the Policy.

17. By refusing to pay the $102,306.17 in excess specific stop loss claims sought by Plaintiff Trust, Defendant Insurer has breached its contract of insurance with Plaintiff Trust, and Plaintiff Trust has

Complaint

512889

4

thereby suffered damages in the amount of $102,306.17 as a direct, proximate and consequential result of such breach.

## SECOND CAUSE OF ACTION

(Breach of the Covenant of Good Faith and Fair Dealing)

18. Plaintiff incorporates by reference and realleges as though fully set forth herein each and every allegation set forth in Paragraphs 1 through 17, above.

19. At all times relevant to this action, Defendant Insurer had a duty to act in good faith and to deal fairly with Plaintiff Trust with regard to Defendant Insurer's obligations under the Policy and its processing and payment of claims made on the Policy.

20. At all time relevant to this action, Defendant Insurer accepted premiums from Plaintiff Trust as consideration for the coverage of the Policy, and it accepted monthly reports from Plaintiff Trust which showed covered participants for whom the Trust had paid claims equal to or in excess of the specific stop loss deductible. Despite accepting premiums and information putting Defendant Insurer on notice of specific stop loss claims, Defendant Insurer has denied payment of the claims set forth in Paragraphs 7 through 10, above. Defendant Insurer thereby denied to Plaintiff Trust the benefits of its insurance contract with Defendant Insurer in bad faith. Defendant Insurer was in a special relationship with Plaintiff Trust as its insurer, and by its actions has breached its covenant of good faith and fair dealing by denying to Plaintiff Trust the benefit of its insurance contract.

21. Plaintiff Trust has lost interest and/or investment income by Defendant Insurer's refusal to pay these excess specific stop loss claims, and it has been forced to hire legal counsel and file suit to pursue these claims. Plaintiff Trust is therefore entitled to recover interest on the total amount of its excess specific stop loss claims and to receive payment for its costs of suit and attorneys' fees in pursuing this action.

Complaint

512889

22. Defendant Insurer has acted willfully and with a conscious disregard for the rights of Plaintiff Trust to obtain the benefit of its insurance contract. Accordingly, Plaintiff Trust is entitled to recover punitive damages from Defendant Insurer for its failure to pay Plaintiff's claims.

### THIRD CAUSE OF ACTION

(Declaratory Relief)

23. Plaintiff incorporates by reference and realleges as though fully set forth herein each and every allegation set forth in Paragraphs 1 through 22, above.

24. Because Plaintiff Trust has fulfilled all conditions required under the Policy to receive payment for its excess specific stop loss claims, and because Defendant Insurer has denied, and continues to deny, payment under the terms of the Policy, an actual controversy has arisen between the parties. Accordingly, Plaintiff seeks a declaratory judgment with regard to Defendant Insurer's obligations under the terms of the Policy.

### FOURTH CAUSE OF ACTION

(Unfair Business Practices - California Business & Professions Code §17200, et seq.)

25. Plaintiff Trust incorporates by reference and realleges as though fully set forth herein each and every allegation set forth in Paragraphs 1 through 24, above.

26. Defendant Insurer has engaged in unfair business practices in violation of the California Business and Professions Code Section 17200, et seq., by its refusal to pay $102,306.17 in excess specific stop loss claims to Plaintiff Trust pursuant to the Policy. As a result, Plaintiff Trust is entitled to payment of $102,306.17 from Defendant Insurer for its unfair business practices.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

1. For the sum of $102,306.17, or an amount according to proof, in unpaid excess specific stop loss claims under the Policy, plus interest at the legal rate from the date on which Defendant refused to pay such claims;

2. For other economic and consequential damages, in an amount according to proof;

3. For punitive damages in an amount according to proof;

4. For costs of suit herein, and an award of attorney's fee incurred by Plaintiff;

5. For declaratory relief; and

6. For such other relief as the Court may deem proper.

Dated: 1/27/2004

Respectfully Submitted,

BEESON, TAYER & BODINE, APC

By: _____
JOHN PROVOST
Attorneys for the Northern California
Sheet Metal Workers Trust

Complaint

512889